JUDGE PHILIP MARTINEZ

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| JAVIER CADENA CAZARES and ANGELINA CAZARES<br><br>*Plaintiffs*,<br><br>v.<br><br>ORTHO EL PASO, P.A.; CVS HEALTH INC., d/b/a CVS; CVS CAREMARK, INC., d/b/a CVS; GENCO PHARMACEUTICAL SERVICES; AVENTIS INC.; AVENTIS PHARMACEUTICAL, INC.; SANOFI SA; SANOFI U.S.; SANOFI-AVENTIS; SANOFI-AVENTIS, LLC; SANOFI-AVENTIS U.S. LLC; SANOFI U.S. SERVICES, INC.; SANOFI PASTEUR; SANOFI GENZYME; GENZYME CORPORATION; GENZYME BIOSURGERY<br><br>*Defendants*. | CIVIL ACTION FILE<br><br>NO. 3:20-cv-00005 |

## NOTICE OF REMOVAL

TO: THE JUDGES OF THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS, EL PASO DIVISION

Without waiving any available defenses, pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, Defendants Aventis Inc., Aventis Pharmaceutical, Inc. (non-existent entity), Aventis Pharmaceuticals, Inc. (non-existent entity), Sanofi SA (non-existent entity), Sanofi U.S. (non-existent entity), Sanofi-Aventis (non-existent entity), Sanofi-Aventis LLC (non-existent entity), Sanofi-Aventis U.S. LLC, Sanofi U.S. Services, Inc., Sanofi Pasteur (non-existent entity), Sanofi Genzyme (non-existent entity), Genzyme Corporation ("Genzyme"), Genzyme Biosurgery (non-existent entity) (collectively "Genzyme/Sanofi Defendants") through undersigned counsel, hereby

remove the above-captioned action from the 34th Judicial District Court in El Paso, Texas, to the United States District Court for the Western District of Texas, El Paso division. This Court has jurisdiction over this matter because Plaintiffs Javier and Angelina Cazares ("Plaintiffs") and the properly joined Defendants are completely diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs. *See* 28 U.S.C. §§ 1332(a), 1441(b). In support of removal, Genzyme/Sanofi Defendants state as follows:

1. On November 8, 2019, an action was commenced against Genzyme/Sanofi Defendants, CVS Health, Inc. d/b/a CVS, CVS Caremark, Inc. d/b/a CVS, Genco Pharmaceutical Services, and Ortho El Paso, P.A. in the 34th Judicial District Court, El Paso, Texas, bearing case No. 2019DCV4364. *See* Pet. and Req. for Discl. (Ex. A). Genzyme/Sanofi Defendants were served with process on December 9, 2019. On January 2, 2020, Plaintiffs filed their First Amended Petition. *See* First Amended Pet. (Ex. A).

2. This Notice of Removal is timely filed under 28 U.S.C. § 1446(b), as it is filed within thirty days of service on Genzyme/Sanofi Defendants of the initial pleading.

### I. Diversity Jurisdiction

3. This court has original diversity jurisdiction over this action under 28 U.S.C. § 1332.

4. Section 1332 provides, in pertinent part, that the "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between . . . citizens of different states." 28 U.S.C. § 1332(a)(1).

5. The diversity of citizenship requirement in 28 U.S.C. § 1332(a)(1) is met where none of the defendants is a citizen of the same state as any plaintiff. *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

6. As explained more fully below, both requirements for original diversity jurisdiction under 28 U.S.C. § 1332 are satisfied.

A. **Defendant Ortho El Paso, P.A. Has Been Improperly Joined.**

7. Under Supreme Court precedent, a district court must ignore the presence of a non-diverse defendant if that defendant was improperly joined to defeat federal diversity jurisdiction. *See Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921) (holding that defendant's right to removal cannot be defeated by fraudulently joining a non-diverse party).

8. A defendant is improperly joined if "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004). In other words, "[t]he court may conduct a Rule 12(b)(6)–type analysis . . . to determine whether the complaint states a claim under state law against the in-state defendant." *Id.*

9. Plaintiffs' claims arise out of Plaintiff Javier Cazares's alleged adverse reaction to a knee injection administered by Ortho El Paso, P.A. The injection, an FDA-approved medical device known as Synvisc-One, was manufactured by Genzyme Corporation.

10. Plaintiffs assert product liability claims based on strict liability, manufacturing defect, negligence, and *res ipsa loquitur*. *See generally* First Amended Pet. (Ex. A). They also

assert claims for breach of express warranty and breach of implied warranty of merchantability. *See id.*

11. Plaintiffs elected not to assert claims for medical malpractice in the Complaint. As made clear in the Amended Complaint, even Plaintiffs' negligence claim focuses solely on "the design, manufacture, and marketing of Synvisc-One Lot Number 7RSL021" and contains no allegations regarding the care and treatment provided by Ortho El Paso. First Amended Pet. at 7 (Ex. A). Where a complaint sounds in product liability and contains no claim for medical negligence, courts have found non-diverse healthcare provider defendants improperly joined. *See Poole v. Ethicon, Inc.*, Civil Action No. H–12–0339, 2012 WL 868781, at *3 (S.D. Tex. March 13, 2012) (affirming removal of action and holding that a non-diverse defendant physician was improperly joined where plaintiffs' medical malpractice claims failed, and the only remaining claims were based on product liability). Here, as in *Poole*, "the only allegation about [Ortho El Paso] is that [it] performed" the injection of Synvisc-One. *Id.* at *3; *see also* First Amended Pet. at 5 ("Plaintiff's doctor, working from Defendant Ortho El Paso's facility, administered a dose of contaminated Synvisc-One to Mr. Cazares for his knee pain.") (Ex. A). Where "[t]here are no allegations that [Ortho El Paso] breached any duty of care—or what that breach might be—or that [Ortho El Paso's] actions or inactions caused or contributed to [Plaintiff Javier Cazares's] . . . problems," Plaintiffs fail to assert any claims for medical malpractice. *Poole*, 2012 WL 868781, at *3.

12. Rather, Plaintiffs' claims sound entirely in product liability. There is no reasonable basis for this Court to predict that Plaintiffs will be able to recover against Ortho El Paso under any product liability theory. Although Genzyme/Sanofi Defendants make no concessions of

liability under the facts of this case, the law in Texas is clear: a medical provider is not liable for the provision or use of an allegedly defective medical device that is essential to rendering the provider's medical services. *See Cobb v. Dall. Fort Worth Med. Ctr.-Grand Prairie*, 48 S.W.3d 820, 826 (Tex. App. 2001); *Easterly v. HSP of Tex., Inc.*, 772 S.W.2d 211, 213 (Tex. App. 1989) (holding that a medical provider is not liable for injuries caused by a defective medical product that "was intimately and inseparably connected to the professional service of providing" medical care); *Shivers v. Good Shepherd Hosp., Inc.*, 427 S.W.2d 104, 107 (Tex. App. 1968) (declining to hold hospital strictly liable for administering contaminated injection to plaintiff on the grounds that it was not a manufacturer or distributor of the product); Tex. Jur. 3d *Products Liability* § 93 (2019). As the Court in *Hadley v. Wyeth Laboratories, Inc.* put it, "[c]ourts have routinely held that doctors are engaged in the practice of providing medical services and *even if they use products or prescribed drugs as part of this process*, the essential nature of the relationship is still a professional, medical one," not one of a seller or distributor of a product. 287 S.W.3d 847, 849 (Tex. App. 2009) (emphasis supplied).

13. A product is "intimately and inseparably connected" to the provision of medical care when the medical provider is not in the business of "independently selling [the medical device] to the public" or "providing them outside of its primary purpose of providing medical facilities." *Cobb*, 48 S.W.3d at 826. Courts also consider whether a patient can provide the product to be used in the medical care, because "where the patient cannot provide a product used in the course of medical services, then the product loses its separate character as a good and is part of the service." *Id.* at 827 (*citing Easterly*, 772 S.W.2d at 214).

14. Ortho El Paso was not in the business of selling Synvisc-One, nor did it distribute Synvisc-One outside the context of providing medical care to Mr. Cazares. Moreover, Mr. Cazares had no means of procuring his own unit of Synvisc-One as it is a prescription medical device. Consequently, the unit of Synvisc-One injected into Mr. Cazares's right knee was "intimately and inseparably connected with the provision of medical services" and Ortho El Paso cannot be liable as a distributor of Synvisc-One on a product liability theory. *Cobb*, 48 S.W.3d at 826.

15. Plaintiffs' breach of warranty claims against Ortho El Paso likewise fail, because Ortho El Paso was not acting as a "seller" with regards to Mr. Cazares's Synvisc-One injection. By its plain language § 2.313 of the Texas Business and Commerce Code – the code section Plaintiffs' breach of express warranty claim is based on – only applies to sellers of goods. But Texas law is clear that medical providers are not "sellers" as it relates to the products they use in the provision of medical services. *See Cobb*, 48 S.W.3d at 826 ("Generally, hospitals are not engaged in the business of selling the products or equipment used in the course of providing medical services."); *Hadley*, 287 S.W.3d at 849 (holding that a doctor is not a seller of products that are "intimately and inseparably connected with the provision of medical services").

16. Consequently, Texas courts—including the Texas Supreme Court—have consistently rejected breach of warranty claims against medical providers that arise out of injuries allegedly caused by products used in the rendition of medical services. *See Walden v. Jeffrey*, 907 S.W.2d 446, 448 (Tex. 1995) ("[I]mplied warranties do not apply to a product provided as an inseparable part of the rendition of medical services."); *Easterly*, 772 S.W.2d 211, at 213-14 ("In order for the breach of warranty to apply, there must be a sale of goods by a merchant who deals in goods of the kind. . . . As a general proposition, hospitals are providers of services, not merchants

selling goods. Absent a specific showing of the sale of a good not intimately related to the medical service provided, summary judgment was proper on the [plaintiffs'] breach of warranty cause of action."); *Cobb*, 48 S.W.3d at 827 (denying claim for breach of express warranty against medical provider where allegedly defective product was inseparable from the provision of medical services).

17. As discussed above, Ortho El Paso provided Mr. Cazares with a unit of Synvisc-One for the sole purpose of treating his knee pain. *See* First Amended Pet. (Ex. A) at 5. Ortho El Paso does not provide Synvisc-One separate from its function as a medical provider and Mr. Cazares could not have obtained his own unit of Synvisc-One.

18. When faced with allegations and claims almost identical to the ones in this case, at least one Texas federal court found non-diverse healthcare providers to be improperly joined where plaintiffs broadly included defendant-healthcare providers in allegations regarding the production, manufacture, distribution, marketing, storing, handling, processing, and selling of an allegedly defective medical product. *Jones v. American Home Product Corp.*, 344 F. Supp. 2d 500, 503 (E.D. Tex. 2004). In *Jones*, the court found that non-diverse healthcare provider defendants were improperly joined in a product liability action where the allegations centered on duties performed by the manufacturing defendants. *Id.* at 503. Holding that the complaint alleged "no actionable facts or theory which would arguably present a reasonable basis for predicting that state law would allow recovery against one of these [healthcare provider] defendants," the court refused "to engage in the pretense that a doctor or a local hospital manufactured, created, designed, labeled, sterilized,

packaged, and advertised" the medical product at issue. *Id.* at 503.[1] The allegations in Plaintiffs' complaint should receive the same treatment as there is no reasonable basis for predicting that state law would allow recovery against Ortho El Paso for designing, constructing, manufacturing, labeling, handling, storing, and/or distributing Synvisc-One.

19.  For the foregoing reasons, the citizenship of Ortho El Paso is disregarded in the jurisdictional analysis on the grounds that Ortho El Paso was improperly joined to defeat diversity.

### B. The Remaining Defendants Are Completely Diverse.

20.  Plaintiffs are and were at the commencement of this action, citizens of El Paso County, Texas.

21.  Genzyme Corporation is and was at the commencement of this action, a Massachusetts corporation with a principal place of business in Massachusetts.

22.  Aventis Inc. is and was at the commencement of this action, a Pennsylvania corporation with its principal place of business in New Jersey.

23.  Sanofi-Aventis U.S. LLC is and was at the commencement of this action, solely owned by Sanofi U.S. Services, Inc. Sanofi U.S. Services, Inc. (incorrectly named in the Amended Complaint as Sanofi US Services Inc.) is and was at the commencement of this action, a Delaware corporation with a principal place of business in New Jersey. Accordingly, Sanofi-Aventis U.S. LLC is a citizen of Delaware and New Jersey for purposes of diversity jurisdiction. *See Harvey v.*

---

[1] The Court in *Jones* ultimately concluded that "Even indulging all reasonable inferences in favor of a plaintiff, there is not even a theoretical possibility that the Healthcare Defendants are going to be found liable for manufacturing, creating, designing, labeling, sterilizing, packaging, and advertising the vaccine." *Id.* at 503. This Court should reach the same conclusion here for the reasons discussed above.

*Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008) ("[T]he citizenship of a LLC is determined by the citizenship of all of its members.").

24. Upon information and belief, Sanofi U.S., Sanofi-Aventis, Sanofi-Aventis LLC, Sanofi-Genzyme, Genzyme Biosurgery, Aventis Pharmaceuticals, Inc., Sanofi SA, Sanofi Pasteur are not viable entities. In any event, none of these entities are Texas citizens for purposes of determining diversity of citizenship.

25. Upon information and belief, CVS Health Inc. and CVS Caremark, Inc. are and were at the commencement of this action, Delaware corporations with their principal places of business in Rhode Island.

26. Upon information and belief, Capital Returns, Inc. d/b/a Genco Pharmaceutical Services ("Genco") is a Wisconsin corporation with its principal place of business in Wisconsin.

C. **The Amount in Controversy Exceeds the Jurisdictional Amount.**

27. The amount in controversy exceeds $75,000.

28. "To determine if the amount in controversy requirement is met [the court] look[s] first to the plaintiff's complaint." *Danial v. Daniels*, 162 F. App'x 288, 290 (5th Cir. 2006). Where a plaintiff makes allegations regarding the amount in controversy, those allegations are taken as true for purposes of determining whether the amount in controversy requirement is satisfied. *See id.*; *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938) ("The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith.").

29. In Plaintiffs' First Amended Petition, they allege that "[t]his suit is for monetary relief aggregating in excess of $1,000,000." First Amended Pet. at 2. Consequently, the amount in controversy requirement for federal diversity jurisdiction is satisfied. Genzyme/Sanofi Defendants do, however, dispute that Plaintiffs are entitled to this amount and their reliance on this allegation for purposes of this Notice of Removal in no way waives their right to argue that Plaintiffs are entitled to a lesser amount.

## II. Consent of Co-Defendants

30. Undersigned counsel affirms that all properly joined Defendants consent to the removal of this action. *See Henry v. Indep. Am. Sav. Ass'n*, 857 F.2d 995, 999 (5th Cir. 1988) (requiring all defendants in a state court action to consent to removal); *see also* CVS Pharmacy, Inc. Not. of Consent to Removal; Genco Not. of Consent to Removal (attached collectively as Ex. B). The consent of Ortho El Paso is not required as that party was improperly joined. *See Rico v. Flores*, 481 F. 3d 234, 239 (5th Cir. 2007) ("[A] removing party need not obtain the consent of a co-defendant that the removing party contends is improperly joined.").

## III. Venue

31. Venue is proper in the Western District of Texas, El Paso Division, pursuant to 28 U.S.C. § 1441 and 28 U.S.C. § 124(d)(3), because this district and division encompass the 34th Judicial District of Texas, the forum from which the case has been removed.

## IV. Notice

32. Pursuant to 28 U.S.C. § 1446(d), a Notice of Filing of Notice of Removal, attaching this Notice of Removal, is being filed contemporaneously with the Clerk of the 34th Judicial District Court in El Paso, Texas, a copy of which is attached hereto as Exhibit C.

33.     Upon information and belief, the pleadings attached hereto as Exhibit A represent all the pleadings served in this action in the state court.

34.     This Notice of Removal is being served on the adverse party as required by 28 U.S.C. § 1446(d).

WHEREFORE, having shown that the procedural and substantive requirements for removal have been met, Genzyme/Sanofi Defendants respectfully remove this action from the 34th Judicial District of Texas, to this Court pursuant to 28 U.S.C. § 1441.

Respectfully submitted,

**MANN MORROW, PLLC**
671 S. Mesa Hills Drive, Suite A-1
El Paso, Texas 79912
(915) 226-0400/Phone
(915) 271-8950/Fax

By:_____
J. SCOTT MANN
Texas State Bar No. 24002519
Scott.Mann@mannmorrow.com

*Counsel for Genzyme/Sanofi Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of January 2020 a true and correct copy of the above and foregoing was sent by United States mail and/or by electronic mail to:

Adam Setra and Russell Murray
Lovett Law Firm
619 Arizona Ave.
El Paso, TX 79902
getlit@lovettlawfirm.com

*Counsel for Plaintiffs, Javier and Angelina Cazares*

Mark Bracken, Esq.
Robles, Bracken & Hughes PLLC
310 N. Mesa, Ste. 700
El Paso, Texas 79901
(915) 544-1144
(915) 544-1288 (facsimile)

*Counsel for Ortho El Paso, P.A.*

_____
J. SCOTT MANN