## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| **JAVIER CADENA CAZARES and** | § | |
| **ANGELINA CAZARES,** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **NO.  EP-20-CV-05-PRM** |
| | § | |
| **ORTHO EL PASO, P.A., et al.,** | § | |
| **Defendants.** | § | |

### REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the Court are "Plaintiffs' Motion to Remand" ("Motion to Remand") (ECF No. 4), filed by Plaintiffs Javier Cadena Cazares and Angelina Cazares, and "Defendant Ortho El Paso, P.A.'s Motion to Dismiss for Failure to State a Claim Upon Which Relief May Be Granted" ("Motion to Dismiss") (ECF No. 10), filed by Defendant Ortho El Paso, P.A. ("Ortho El Paso").[1] The District Court referred these motions to this Court for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 1(d) of Appendix C to the Local Rules of the United States District Court for the Western District of Texas. (ECF No. 20). For the following reasons, the Court **RECOMMENDS** that the Motion to Remand be **GRANTED** and the case be **REMANDED.**

### I.        BACKGROUND

In this lawsuit, Plaintiffs allege that Plaintiff Javier Cazares received an injection of "the drug Synvisc-One® (Hylan g-f20)" ("Synvisc-One") for his knee pain and that the Synvisc-One syringe was contaminated, causing Plaintiffs to sustain injuries. (Plaintiffs' First Amended

---

[1] Both motions are based on many of the same factual and legal arguments. Accordingly, the Court finds it efficient to address both motions in a single Report and Recommendation.

Petition, ECF No. 1-1, at 8–9) (hereinafter "Pet."). Plaintiffs bring claims against several named defendants[2] of strict liability, manufacturing defect, negligence, breach of express warranty, and breach of the implied warranties of merchantability and fitness for a particular purpose. *Id.* at 9–12. The "Factual Background" alleged in Plaintiffs' First Amended Petition is as follows:

> The named Defendants are manufacturers, designers, producers, marketers, sellers, handlers, and/or distributors of the drug Synvisc-One® (Hylan g-f20). Following a surge in complaints related to a contaminated batch of Synvisc-One® syringes, the Defendants initiated a voluntary recall of the 12,380 syringes in single lot number 7RSL021 ("Contaminated Lot"). The Defendants' recall notice cited a lack of environmental control which resulted in microbial contamination to the syringes in the recalled lot. The Contaminated Lot was produced at the Defendants' plant in Ridgefield, New Jersey and distributed between October 25, 2017 and November 7, 2017.

> On November 9, 2017, Mr. Cazares was suffering from osteoarthritis in his knee. Plaintiff's doctor, working from Defendant Ortho El Paso's facility where the drug was ultimately distributed and sold for final use, administered a dose of contaminated Synvisc-One® to Mr. Cazares for his knee pain. The contaminated syringe was placed into the stream of commerce by all named Defendants, who at all times relevant to this lawsuit, maintained exclusive control of the manufacture, distribution, sale, and administration of the bacteria-infused Synvisc-One®. Due to the bacterial cocktail he was injected with, Mr. Cazares suffered an immediate adverse reaction and subsequent infection that eventually necessitated several surgeries, months of therapy, and numerous hospitalizations. As a result of the injuries caused by the Defendants, both Plaintiffs sustained severe injuries described below.

*Id.* at 8–9.

Plaintiffs initially filed suit in the 34th Judicial District Court in El Paso County, Texas, on November 8, 2019, and filed their First Amended Petition in that court on January 2, 2020. *Id.* at 2–4. On January 8, 2020, the case was removed to the United States District Court for the Western

---

[2] Plaintiffs also name "Defendant, John Doe Corporation." (Pet., ECF No. 1-1, at 8). However, "the citizenship of defendants sued under fictitious names shall be disregarded" when determining whether removal is proper on the basis of diversity jurisdiction. 28 U.S.C. § 1441(b)(1).

District of Texas, El Paso Division by Defendants Aventis Inc.; Aventis Pharmaceutical, Inc.; Aventis Pharmaceuticals, Inc.; Sanofi SA; Sanofi U.S.; Sanofi-Aventis; Sanofi-Aventis LLC; Sanofi-Aventis U.S. LLC; Sanofi U.S. Services, Inc.; Sanofi Pasteur; Sanofi Genzyme; Genzyme Corporation; and Genzyme Biosurgery (hereinafter "Removing Defendants"). (Notice of Removal, ECF No. 1, at 1) (hereinafter ("Rem. Not."). Removing Defendants attached to their Notice of Removal the "Notice of Consent to Removal" of Defendant CVS Pharmacy, Inc. ("incorrectly sued here as CVS Health, Inc. and CVS Caremark, Inc."), (ECF No. 1-4, at 2–3), and Defendant Capital Returns, Inc. d/b/a Genco Pharmaceutical Services, *id.* at 4–5, (both Defendants hereinafter included in "Removing Defendants").[3] In the Notice of Removal, Removing Defendants assert that removal is proper on the basis of original diversity jurisdiction, contending that the amount in controversy requirement is met and there is complete diversity of the parties properly joined. (Rem. Not., ECF No. 1, at 2). Removing Defendants further argue that the presence of Ortho El Paso, which did not join in removal, does not defeat diversity of the parties because Ortho El Paso was improperly joined to this lawsuit. *Id.* at 3.

On February 7, 2020, Plaintiffs filed the instant Motion to Remand arguing that this Court did not have subject matter jurisdiction because the parties are not diverse, specifically because Ortho El Paso is a proper party to this lawsuit. (Motion to Remand, ECF No. 4) (hereinafter "Remand Mot."). Removing Defendants filed a response in opposition on February 13, 2020. (Defendants' Response in Opposition to Plaintiffs' Motion to Remand, ECF No. 7) (hereinafter "Remand Mot. Opp."). On February 25, 2020, Ortho El Paso filed the instant Motion to Dismiss, raising essentially the same arguments as those found in the Notice of Removal and Removing Defendants' Response in Opposition to Plaintiffs' Motion to Remand. (ECF No. 10). On March

---

[3] Each Notice of Consent to Removal stated that the respective Defendant "fully joins in with the Notice of Removal." (ECF No. 1-4, at 2, 4).

10, 2020, Plaintiffs' filed a response in opposition to the Motion to Dismiss, arguing that the Motion to Dismiss is untimely. (ECF No. 12). Ortho El Paso filed a reply thereto on March 13, 2020. (ECF No. 13).

## II.   LEGAL STANDARD

A.   MOTION TO REMAND

### i.   *Removal Based on Diversity Jurisdiction*

In general, pursuant to 28 U.S.C. § 1441(a), the defendant(s) to a civil action brought in state court may remove the action to the proper United States district court where such district court has original jurisdiction of the action. "A federal district court may exercise original jurisdiction over any civil action that either satisfies diversity requirements or that arises under the federal constitution, statutes, or treaties—commonly referred to as 'federal question' jurisdiction." *Energy Mgmt. Servs., LLC v. City of Alexandria*, 739 F.3d 255, 258–59 (5th Cir. 2014) (citing 28 U.S.C. §§ 1331, 1332, 1369). For diversity jurisdiction, federal district courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different states . . . ." 28 U.S.C. § 1332(a)(1).

"The removing party bears the burden of showing that federal jurisdiction exists and that removal was proper." *Manguno v. Prudential Prop. and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). In cases removed based on diversity jurisdiction, "the party asserting federal jurisdiction must 'distinctly and affirmatively allege [ ]' the citizenship of the parties." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001) (quoting *Stafford v. Mobil Oil Corp.*, 945 F.2d 803, 804 (5th Cir. 1991)). In general, for the purposes of determining diversity of parties, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business . . . ." 28 U.S.C.

§ 1332(c)(1).

Furthermore, "[t]o determine whether jurisdiction is present for removal, we consider the claims in the state court petition as they existed at the time of removal." *Manguno*, 276 F.3d at 723 (citing *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995)). "Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand." *Id.* (citing *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000)).

### ii. Improper Joinder

Pursuant to 28 U.S.C. § 1441, "[a] civil action otherwise removable solely on the basis of the jurisdiction under [28 U.S.C. § 1332(a)] may not be removed if any of the parties in interest *properly* joined and served as defendants is a citizen of the State in which such action is brought. 28 U.S.C. § 1441(b)(2) (emphasis added). "[T]he purpose of the improper joinder inquiry is to determine whether or not the in-state defendant was properly joined . . . ." *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004).

The Fifth Circuit has "recognized two ways to establish improper joinder: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *Id.* (quoting *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003)). Defendants have not claimed actual fraud in the pleading of jurisdictional facts. Therefore, the Court will conduct the analysis under the second method of establishing improper joinder.

Under the second method, "the defendant [must] demonstrate[ ] that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id.* This may be resolved in one of two ways.

The first way is by conducting "a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Id.* When conducting a Rule 12(b)(6) analysis the federal pleading standard is applied rather than the state pleading standard. *See Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 200–208 (5th Cir. 2016) (reasoning that the Rule 12(b)(6) analysis is "inseparable from the federal pleading standard"). The second way applies in cases where the plaintiff has stated a claim but "has misstated or omitted discrete facts that would determine the propriety of joinder," in which case the district court may "pierce the pleadings and conduct a summary inquiry." *Smallwood*, 385 F.3d at 573.

"To determine issues of state law, we look to final decisions of the state's highest court, and when there is no ruling by that court, then we have the duty to determine as best we can what the state's highest court would decide." *James v. State Farm Mut. Auto. Ins. Co.*, 743 F.3d 65, 69 (5th Cir. 2014) (quoting *Westlake Petrochems., L.L.C. v. United Polychem, Inc.*, 688 F.3d 232, 238 n.5 (5th Cir. 2012)) (internal quotation marks omitted). "In making an [*Erie*] guess in the absence of a ruling from the state's highest court, this Court may look to the decisions of intermediate appellate state courts for guidance." *Id.* (quoting *Howe ex rel. Howe v. Scottsdale Ins. Co.*, 204 F.3d 624, 627 (5th Cir. 2000)) (internal quotation marks omitted) (alteration in original).

B.  MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure challenges the sufficiency of a pleading to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In considering the motion, "the plaintiff's complaint is to be construed in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true." *Oppenheimer v. Prudential Secs. Inc.*, 94 F.3d 189, 194 (5th Cir. 1996). However, the court may not look beyond the complaint "to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

### III.    ANALYSIS

A.  MOTION TO REMAND

The only disputed issue before the Court bearing on whether the Court has subject matter jurisdiction over this civil action on the basis of diversity jurisdiction is whether Ortho El Paso was properly joined so as to remove the case from this Court's jurisdiction. The parties do not dispute that the amount in controversy exceeds $75,000 and that the parties—with the exception of Ortho El Paso—are citizens of different states. *See* (Rem. Not., ECF No. 1, at 8–10) (alleging that Plaintiffs are citizens of Texas and each Removing Defendant is a citizen of a state other than Texas and that the amount in controversy exceeds $75,000); (Remand Mot., ECF No. 4) (arguing that removal was improper due to lack of diversity because Defendant Ortho El Paso is a citizen of Texas and was properly joined).[4]

Plaintiffs argue that Defendants have not met their burden to establish that removal was proper. (Remand Mot., ECF No. 4). Plaintiffs assert that there is no diversity jurisdiction because Ortho El Paso is a resident of Texas and made "a representation to Plaintiff in the course of their

---

[4] The Court has found no pleading before it that asserts the citizenship of Ortho El Paso. However, the Notice of Removal is based on diversity jurisdiction without the presence of Ortho El Paso, *see* (Rem. Not., ECF No. 1), and Removing Defendants and Plaintiffs have referred to Ortho El Paso as having Texas citizenship. (Remand Mot., ECF No. 4, at 5; Remand Mot. Opp., ECF No. 7, at 2). It is the burden of the party asserting the existence of diversity jurisdiction to "'distinctly and affirmatively allege [ ]' the citizenship of the parties," which Removing Defendants have not done if Ortho El Paso is found to be properly joined. *See Howery*, 243 F.3d at 919.

business dealings that the injection, exclusively in its control, was 'sterile', 'non-pyrogenic', and would serve its intended purpose." *Id.* at 7. In support, Plaintiffs cite *Providence Hospital v. Truly*, asserting that a hospital was found liable for breach of warranty under the Texas Deceptive Trade Practices Act ("DTPA") "when it administered a contaminated drug to a patient during eye surgery." *Id.* (citing 611 S.W.2d 127 (Tex. App.—Waco 1980, writ dism'd)).

In response, Removing Defendants first argue that Ortho El Paso was improperly joined as a defendant, claiming that under Texas law "a medical provider is not considered to be a 'seller' of medical devices for purposes of product liability or breach of warranty claims if the device at issue is related to the 'essential professional service,' such that it is 'inseparable from the services rendered' by the healthcare provider." (Remand Mot. Opp., ECF No. 7, at 4) (citing *Cobb v. Dall. Fort Worth Med. Ctr.—Grand Prairie*, 48 S.W.3d 820, 826–27 (Tex. App.–Waco 2001, no pet.)). Removing Defendants argue that Plaintiffs have made no allegation of fact that "the administration of Synvisc-One was not 'an inseparable part of the rendition of medical services' by Ortho El Paso." *Id.* at 5. Secondly, Removing Defendants assert that Plaintiffs have failed to state a claim against Ortho El Paso under the federal pleading standard because Plaintiffs do not identify which specific defendant or defendants "to whom the allegations are addressed." *Id.* at 6.

Plaintiffs argue that they have stated a claim against Ortho El Paso specifically for breach of express warranty. *See* (Remand Mot., ECF No. 4, at 7) (citing facts alleged under the claim for breach of express warranty in their First Amended Petition). Accordingly, the Court begins its 12(b)(6)-type analysis with Plaintiff's claim against Ortho El Paso for breach of express warranty.

### i. Breach of Express Warranty

Texas has adopted provisions of the Uniform Commercial Code relating to "transactions in goods" under Chapter 2 of Title 1 "Uniform Commercial Code" of the Texas Business and

Commerce Code. *See* Tex. Bus. & Comm. Code § 2.101 ("This chapter may be cited as Uniform Commercial Code—Sales."); *see also Selectouch Corp. v. Perfect Starch, Inc.*, 111 S.W.3d 830, 834 (Tex. App.—Dallas 2003, no pet.). Within Chapter 2, there are three separate and distinct provisions setting forth, individually, the creation of "Express warranties by affirmation, promise, description, sample," § 2.313; "Implied warranty: merchantability; usage of trade," § 2.314; and "Implied warranty: fitness for a particular purpose," § 2.315. Tex. Bus. & Com. Code. §§ 2.313–2.315. In their First Amended Petition, Plaintiffs set forth one cause of action for breach of express warranty under § 2.313 of the Texas Business and Commerce Code and a separate cause of action for breach of implied warranties under both § 2.314 and § 2.315 of the Texas Business and Commerce Code. (Pet., ECF No. 1-1, at 11). The issue in the instant analysis is the existence of a cause of action for breach of express warranty under § 2.313 of the Texas Business and Commerce Code.

Section 2.313 provides, *inter alia*, that "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise" and that "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Tex. Bus. & Com. Code § 2.313(a)(1)–(2). Section 2.102 provides that "[u]nless the context otherwise requires, this chapter applies to transactions in goods . . . ." Tex. Bus. & Com. Code § 2.102. A "seller" for purposes of express warranties is defined as "a person who sells or contracts to sell goods." Tex. Bus. & Com. Code § 2.103(a)(4). A "sale" is defined as "the passing of title from the seller to the buyer for a price . . . ." Tex. Bus. & Com. Code § 2.106(a). "Goods" are defined, generally, as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale . . . ."

Tex. Bus. & Com. Code § 2.105(a).

In Texas, to recover for a breach of express warranty, a plaintiff must prove:

> (1) an express affirmation of fact or promise by the seller relating to the goods; (2) that such affirmation of fact or promise became a part of the basis of the bargain; (3) that the plaintiff relied upon said affirmation of fact or promise; (4) that the goods failed to comply with the affirmations of fact or promise; (5) that the plaintiff was injured by such failure of the product to comply with the express warranty; and (6) that such failure was the proximate cause of plaintiff's injury.

*Great Am. Prods. v. Permabond Int'l., a Div. of Nat'l Starch & Chem. Co.*, 94 S.W.3d 675, 681 (Tex. App.—Austin 2002, pet. denied) (citing *Morris v. Adolph Coors Co.*, 735 S.W.2d 578, 587 (Tex. App.—Fort Worth 1987, writ ref'd n.r.e.); *accord Minsa Corp. v. SFTC, LLC*, 540 S.W.3d 155, 161 (Tex. App.—Amarillo 2017, no pet.) (citing *Gen. Supply & Equip. Co. v. Phillips*, 490 S.W.2d 913, 917 (Tex. App.—Tyler 1972, writ ref'd n.r.e.)).

The specific factual allegations against Ortho El Paso contained in the First Amended Petition are that: (1) "Ortho El Paso P.A. is a professional association[5] licensed to conduct business in El Paso County, Texas[;]" (2) "Plaintiff's doctor, working from Defendant Ortho El Paso's facility where the drug was ultimately distributed and sold for final use, administered a dose of contaminated Synvisc-One® to [Plaintiff Javier Cazares] for his knee pain;" (3) "[t]he contaminated syringe was placed into the stream of commerce by all named Defendants;" and (4) "each Defendant expressly warranted that the contents of the syringe were 'sterile and

---

[5] Under the Texas Business Organizations Code, a "professional association" is defined as:

> an association, as distinguished from either a partnership or a corporation, that is: (A) formed for the purpose of providing the professional service rendered by a doctor of medicine, doctor of osteopathy, doctor of podiatry, dentist, chiropractor, optometrist, therapeutic optometrist, veterinarian, or licensed mental health professional; and (B) governed as a professional entity under this title.

Tex. Bus. Org. Code § 301.003(2).

nonpyrogenic.'" (Pet., ECF No. 1-1, at 5, 8–9, 11). Plaintiffs further allege that instead of a "'sterile and nonypyrogenic' syringe, the Defendants furnished and administered a contaminated syringe loaded with a bacterial cocktail which caused the plaintiff to suffer severe adverse reactions to the product requiring surgical intervention." *Id.* at 11.

Based on these allegations, the Court is of the opinion that Plaintiffs have stated a claim against Ortho El Paso for breach of express warranty. The Removing Defendants counter that Texas courts have articulated that when a product is inseparable from the medical services provided, a medical provider cannot be held liable for strict liability, breach of implied warranty, or breach of express warranty. (Rem. Not., ECF No. 1, at 4–8; Remand Mot. Opp., ECF No. 7, at 4–5). As the Court will elaborate below, the difficulty with Removing Defendants' argument is their tendency to conflate and treat as indistinguishable the distinct claims of strict liability, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, and breach of express warranty. However, as to breach of express warranty, close scrutiny of the cases cited by Removing Defendants reveals that the Texas cases cited have not spoken definitively on this specific issue. That is, the cases do not announce what this Court would construe as a settled rule under Texas law. Without such, this Court cannot conclude that "there is no reasonable basis for the district court to predict that [Plaintiffs] might be able to recover against [Ortho El Paso]" on a claim of breach of express warranty in state court. *See Smallwood*, 385 F.3d at 573.

Turning first to the two cases involving questions of improper joinder in federal court, Removing Defendants rely on *Poole v. Ethicon*, *Inc.*, No. H-12-0339, 2012 WL 868781 (S.D. Tex. Mar. 13, 2012), and *Jones v. American Home Products Corporation*, 344 F.Supp.2d 500 (E.D. Tex. 2004), as examples of federal courts finding non-diverse medical providers fraudulently

joined in product liability cases removed from Texas state court. (Rem. Not., ECF No. 1, at 4, 7–8; Remand Mot. Opp., ECF No. 7, at 7–8). In *Poole*, involving products liability claims against manufacturers of surgical mesh, the plaintiffs added four in-state defendants (two doctors and their respective medical practices) to an amended petition "just before" the case was removed to federal court, asserting claims of medical malpractice and vicarious liability. 2012 WL 868781, at *1. The court held that the plaintiffs failed to state claims of medical malpractice and vicarious liability against the in-state defendants and noted that the plaintiffs' original petition "only asserted products-liability claims against the out-of-state corporate defendants. The amended petition did not add new facts to support the addition of the in-state defendants." *Id.* at *3. Accordingly, the court concluded that the defendant had met its burden of showing that the amended petition "does not provide a reasonable basis to predict that [the plaintiffs] could recover against the in-state defendants," and denied the motion to remand. *Id.* Critically, for the purposes of this Court's inquiry, there was no analysis in *Poole* as to whether the plaintiffs had stated a claim against the in-state healthcare defendants for any of the product liability claims, nor does the opinion mention claims for breach of warranty. Accordingly, the Court does not find *Poole* persuasive, much less providing binding authority, to support a determination that Plaintiffs' breach of express warranty claim against Ortho El Paso is foreclosed.

Next, *Jones* involved a compound, Thimerosal, used in vaccinations, "which allegedly can cause harmful effects." 344 F.Supp.2d at 501. Plaintiffs brought suit in state court against out-of-state drug manufacturers and in-state healthcare defendants. *Id.* Defendants removed the case to federal court based on diversity jurisdiction, asserting that the in-state healthcare defendants were fraudulently joined, and Plaintiffs subsequently moved to remand. *Id.* At the start of its analysis, the court noted that "[t]he fact that this is an immunization case puts it in a different category than

other drug cases because Texas statutes impose strict limitations on the possibility of recovery against those who immunize children in Texas." *Id.* at 502. In concluding that the healthcare defendants were fraudulently joined, the court considered, *inter alia*, the claims of strict liability and breach of implied warranty—there was no claim of a breach of express warranty against the healthcare defendants—in the context of two statutes that are not applicable to the instant case: 1) the Medical Liability and Insurance Improvement Act ("MLIIA"), which "limited claims against doctors and other healthcare providers" and which has since been repealed, *id.* at 502–03, n.5; and 2) Texas statutory provisions providing that the healthcare defendants "are not liable for damages arising from an immunization administered to a child, except for injuries resulting from the person's or facility's own acts of negligence" *id.* at 502 (citing Tex. Fam. Code Ann. § 32.103(b) (Vernon 2002). *Id.* at 504.

The analysis in *Jones* of the claims of strict liability and breach of implied warranty within the context of these two specific statutes as well as the absence of a claim of breach of express warranty makes the case, like *Poole*, inapplicable and not germane to the viability of a claim of breach of express warranty under the facts in the instant case. Accordingly, the Court does not find that *Jones* forecloses Plaintiffs' claim of breach of express warranty against Ortho El Paso.

The Court next considers the cases in Texas courts cited by Removing Defendants, beginning with *Shivers v. Good Shepherd Hospital, Inc*. 427 S.W.2d 104 (Tex. App.—Tyler 1968, writ ref'd n.r.e.). In *Shivers*, the negligence claims against a defendant hospital involving the injection of an alleged contaminated drug were dismissed on a motion to dismiss where the plaintiffs alleged that the hospital supplied and administered the alleged contaminated drug and the defendant hospital "is admittedly a charitable hospital." *Id.* at 105. On appeal, the court considered, and rejected, the viability of the claims against the defendant hospital, brought in the

alternative, of strict liability, breach of contractual obligation, and breach of implied warranty. *Id.* at 105–07. As with *Poole* and *Jones*, *Shivers* does not involve a claim of breach of express warranty.

In fact, the only case cited by Removing Defendants that makes an explicit ruling as to a breach of express warranty is *Cobb v. Dallas Fort Worth Medical Center—Grand Prairie. See e.g.*, (Rem. Not., ECF No. 1, at 5–7) (citing 48 S.W.3d 820). In *Cobb*, the plaintiffs brought suit against two doctors and Dallas Fort Worth Medical Center—Grand Prairie ("DFWMC"), asserting claims of negligence, gross negligence, strict liability, breach of implied warranty, and breach of express warranty, all stemming from the surgical installation of incorrectly-sized pedicular hardware to treat the plaintiff's back pain caused by internal disc disruption in her lower back. 48 S.W.3d at 823. The claims against DFWMC were decided at the summary judgment stage.  In addressing the claims of strict liability, breach of implied warranty, and breach of express warranty, the Waco Court of Appeals stated:

> DFWMC is not in the business of independently selling 'TSRH sets' to the public, nor is it in the business of providing them outside of its primary purpose of providing medical facilities. Also, Mrs. Cobb could not have provided her own 'set' for use during her surgery. Accordingly, we hold that the allegedly defective pedicular hardware and screws installed in Mrs. Cobb's back are inseparable from the services rendered by the hospital. Therefore, DFWMC established its entitlement to judgment as a matter of law on the Cobbs's strict liability claim. This holding necessarily forecloses the Cobbs's claims of implied and express warranties under the DTPA as well.

*Id.* at 826–27. In support of its brief holding on the claims of breach of implied and express warranties, the court of appeals simply cited two cases without further explanation, *Easterly v. HSP of Texas, Inc.*, 772 S.W.2d 211, 214 (Tex. App.—Dallas 1989, no writ.), and *Walden v. Jeffery*, 907 S.W.2d 446 (Tex. 1995).

The conclusion reached by the *Cobb* court as to this critical question regarding the viability of a claim for breach of express warranty, and upon which Removing Defendants place so much reliance, is brief and stands alone. Consequently, a detailed examination of the two cases upon which *Cobb* relies for this proposition is in order. Such an examination is all the more necessary given that the *Cobb* court did not include any discussion or analysis suggesting that the legal standards are the same for a breach of implied warranty and a breach of express warranty, two distinct and separate causes of action. Accordingly, the Court looks to *Easterly* and *Walden* to determine the basis of the holding in *Cobb*.

In *Easterly,* the catheter from an epidural kit administered to the plaintiff during labor to facilitate childbirth broke and was lodged in the plaintiff's spine, necessitating subsequent surgery for its removal. 772 S.W.2d at 212–13. The plaintiffs sued Medical Center of Plano ("MCP"), alleging claims of strict liability, breach of warranty, and deceptive trade practices. *Id.* at 213. The court of appeals affirmed the trial court's grant of summary judgment on the matter of strict liability on the basis that "the 'sale' of the epidural kit was integrally related to the medical procedure—the kit was not a separate good sold in a commercial transaction"—and that plaintiffs could not have provided their own epidural kit or anesthesia. *Id.*

As to the breach of warranty claim, the analysis by the Dallas Court of Appeals in *Easterly* reveals that the claim was based on breach of implied warranty of merchantability, which is engaged when the seller is a merchant who deals in goods of the kind. *Id.* at 213–14. Reviewing case law, the court agreed that "the fundamental purpose of hospitals is to heal, [and, a]s a general proposition, hospitals are providers of services, not merchants selling goods." *Id.* at 214. The court stated that, "Texas follows the majority rule that the essence of the hospital stay is the furnishing

15

of the institution's healing services, [which] necessarily require certain goods or products, and these goods are usually incidental to the primary purpose of the hospital's function which is to heal." *Id.* (collecting cases). The court went on to state that "[n]othing in the record supports the argument that MCP was a merchant as defined in the Texas Business and Commerce Code." *Id.* (citing Tex. Bus. & Com. Code Ann. § 2.104 (Vernon 1965)) (which defined "merchant" as "a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction . . ."). The court concluded that "[a]bsent a specific showing of the sale of a good not intimately related to the medical service provided, summary judgment was proper on the [plaintiffs'] breach of warranty cause of action." *Id.*

In *Walden*, the plaintiff sued her dentist "for failing to provide her dentures that fit, as he had promised." 907 S.W.2d at 446. The plaintiff brought causes of action for violation of the DTPA, breach of implied warranties of fitness and suitability, and breach of an oral contract. *Id.* at 447. The Texas Supreme Court affirmed the trial court's grant of summary judgment in favor of the defendant on all claims. *Id.* As to the claim of breach of implied warranty, the Texas Supreme Court stated "implied warranties do not apply to a product provided as an inseparable part of the rendition of medical services." *Id.* at 448. The Texas Supreme Court affirmed the trial court's grant of summary judgment in favor of the defendant because the plaintiff's "pleadings and affidavit establish that the providing of dentures was an inseparable part of Walden's rendition of medical services." *Id.*

It is clear to the Court that neither *Easterly* nor *Walden* involved or considered the availability of a claim for breach of *express* warranty. Yet, as previously discussed, under the Texas Business and Commerce Code, an express warranty is distinct and separate from an implied

16

warranty. *See* Tex. Bus. & Com. Code §§ 2.313–2.315. *Cobb*'s reliance on these two cases to hold

that the plaintiff could not bring a claim for breach of express warranty is, thus, unpersuasive. But

more importantly for this Court's required analysis as to the viability of Plaintiffs' claim against

Ortho El Paso for breach of express warranty, the Court's review of *Cobb* and the authority on

which it relies shows, at a minimum, that this question has not been settled under Texas law.[6]

Finally, having previously noted that Removing Defendants have treated their arguments

related to strict liability, breach of implied warranty, and breach of express warranty as if they are

indistinguishable for the purposes of the facts alleged, the Court finds it necessary to address one

final authority that Removing Defendants cite in support. Removing Defendants cite 59 Texas

Jurisprudence 3d Products Liability § 93. *Strict liability of hospitals*, which states that "[h]ospitals

*generally* are not engaged in the business of selling the products or equipment used in the course

of providing medical services, as would permit them to be held strictly liable for defects in

products, since the products used are intimately and inseparably connected with the provision of

medical services." (emphasis added). On its face, this does not foreclose a cause of action for

breach of express warranty, which is a separate cause of action. Despite referring specifically to

the concept of strict liability as opposed to express warranties, even in this definition, the word

"generally" is not an absolute but rather suggests the possibility of exceptions.

Even the single case cited by Plaintiffs in support of the possibility of prevailing against

---

[6] The only remaining case on which Removing Defendants rely is *Hadley v. Wyeth Laboratories, Inc.* 287 S.W.3d 847 (Tex. App.—Houston 2009, pet. denied). *Hadley*, however, did not involve any of the claims raised in Plaintiffs' First Amended Petition, but rather a doctor's cross-claim against a manufacturer for indemnity as an innocent seller under Chapter 82 of the Texas Civil Practice and Remedies Code. *Id.* at 848. Citing, *inter alia*, a line of cases involving claims for breach of implied warranty and further citing the common law definition of seller as "someone 'engaged in the business of selling' products," the court of appeals concluded that "a doctor who prescribes drugs during the provision of medical services to patients is not a seller and therefore is not entitled to indemnity under section 82.003(a)." *Id.* at 849–51 (citing e.g. *Cobb*, 48 S.W.3d at 826–27; *Easterly*, 772 S.W.2d at 213; *Walden*, 907 S.W.2d at 448). Notwithstanding that this case involved an area of Texas law that is beyond the scope of the First Amended Petition in the instant case, the appellate court relies on three cases, *Cobb*, *Easterly*, and *Walden*, which this Court finds unpersuasive in the matter of the viability of a claim for breach of express warranty in this case.

Ortho El Paso on a claim of breach of express warranty in state court does not address express warranties. In *Providence Hospital*, the plaintiff underwent cataract surgery at the hospital, named as the defendant. 611 S.W.2d at 129. At the conclusion of the surgery, a drug known as "Miochol" was injected into her eye. *Id.* The vial containing the drug had been supplied by the defendant hospital from its pharmacy to the surgery room where a nurse "plac[ed] the vial in a pan of liquid germicide known as 'Bard-Parker solution' for approximately thirty minutes immediately prior to beginning the operation." *Id.* "[P]roof was adduced on the trial that the Miochol injected into [the plaintiff's] eye from the vial was contaminated with the Bard-Parker solution, and that this resulted in injury to the eye and required additional corrective surgery performed on the eye." *Id.*

The plaintiff and her husband filed suit against the alleged manufacturer of the Miochol and the hospital, bringing claims of negligence and violation of the DTPA based upon breach of implied contractual warranty "stemming from an alleged sale of the Miochol to [the plaintiffs] by [the defendant hospital]." *Id.* The DTPA claim was based on, *inter alia*, § 2.315 of the Uniform Commercial Code as adopted by Texas, governing implied warranties of fitness for a particular purpose. *Id.* at 130. Relying on the definitions of "seller" and "sale," in the Texas Business and Commerce Code, the court found that the hospital's charge to the plaintiffs for an eye drug on the day of the surgery, along with other evidence of a sale, was sufficient to "establish a sale of the Miochol by [the defendant hospital] to [the plaintiffs] within the meaning of the statutory provisions." *Id.* at 131.[7]

Distinguishing prior cases, the court determined that whether the defendant hospital could

---

[7] *Providence Hospital* did not involve a claim for breach of express warranty under the Texas Business and Commerce Code. However, the definitions of "seller" and "sale" also apply to § 2.313 of the Texas Business and Commerce Code governing express warranties. *See* Tex. Bus. & Com. Code § 2.103 (providing definitions relevant to Chapter 2 of Title 1 of the Texas Business and Commerce Code governing sales, including the creation of express warranties).

be held liable for a breach of implied warranty under the facts before it was a case of first impression. *Id.* at 131–133. The court also concluded that the facts of the sale invoked the protections of the implied warranty because they did not fall under the specific exceptions set forth in § 2.316 of the Texas Business and Commerce Code. *Id.* at 133. The court affirmed the judgment in favor of plaintiffs on their DTPA claim based on a breach of implied warranty. *Id.* at 137.

Simply stated, Removing Defendants have argued their position on the significant assumption that the case law governing strict liability and implied warranties extends to claims involving express warranties. The Court has found no firm authority for such a proposition from the decisions that Removing Defendants cite in support. Indeed, as the Fifth Circuit has noted, "[u]nlike an action for breach of an implied warranty which evolved from tort liability, an action for breach of an express warranty sounds in contract." *Lindemann v. Eli Lilly and Co.*, 816 F.2d 199, 202 (5th Cir. 1987) (citing *Smith v. Kinslow*, 598 S.W.2d 910, 912 (Tex. App.—Dallas 1980, no writ); *see also*, *Med. City Dall., Ltd. V. Carlisle Corp.*, 251 S.W.3d 55, 60–61 (noting that an express warranty is contractual in nature resulting from a negotiated exchange and a claim for breach of express warranty "involves a party seeking damages based on an opponent's failure to uphold its end of the bargain."). "Section 2-313 of the Texas Uniform Commercial Code . . . defines an express warranty as 'any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain . . . .'" *Lindemann*, 816 F.2d at 202. "To determine the precise elements of an action for breach of express warranty, we must examine the specific contract and the warranties made under that contract." *Id.*

However logical Removing Defendants may find it to apply the case law of strict liability and implied warranties to claims sounding in express warranties, they have provided a citation to only one case even mentioning express warranty, *Cobb*, which itself provides no analysis of that

19

cause of action. The Fifth Circuit has noted the fundamental difference between breach of implied warranty, evolving from tort liability, and breach of express warranty, sounding in contract. In the absence of a clear statement of Texas law from the appropriate courts on this question, the Court will decline the invitation of Removing Defendants to explicitly foreclose the availability of a claim for a breach of express warranty under these factual circumstances. *See James*, 743 F.3d at 69 (instructing courts to look to final decisions of the state's highest court to determine issues of state law, and in the absence of such, to consider the decisions of the state appellate courts). Asking the Court to assume that the law must be so is a bridge too far.

Based on the arguments and legal authority presented by Removing Defendants in their Notice of Removal and in their response to Plaintiffs' Motion to Remand, the Court is of the opinion that Removing Defendants have not met their burden to demonstrate that there is no possibility of recovery by Plaintiffs against Ortho El Paso for breach of express warranty. Thus, considering the "claims in the state court petition as they existed at the time of removal" and construing all ambiguities against removal, *Manguno*, 276 F.3d at 723, the Court finds that Removing Defendants have not met their burden to show that Ortho El Paso was improperly joined. *Smallwood*, 385 F.3d at 573.

For this reason, the Court also concludes that Removing Defendants have not met their burden to show that this Court has subject matter jurisdiction based on the diversity of the parties, and, therefore, it unnecessary and inappropriate to assess the viability of the remainder of the claims against Ortho El Paso. Accordingly, for the foregoing reasons, the Court **RECOMMENDS** that Plaintiffs' Motion to Remand be **GRANTED**.

B.  MOTION TO DISMISS

Having recommended that the Motion to Remand be granted, the Court has not considered

the merits of Ortho El Paso's Motion to Dismiss and recommends that no dispositive action be taken as to the motion if the District Court remands the case. In the alternative, the Court recommends denying the motion as moot based on lack of subject matter jurisdiction.

In the event that this Report and Recommendation is not adopted and it is determined that the Motion to Remand should be denied on the basis that Ortho El Paso was improperly joined, the Court is of the opinion that it would not have jurisdiction to consider the merits of Ortho El Paso's Motion to Dismiss. In *International Energy Ventures Management, L.L.C.*, the Fifth Circuit reasoned:

> After denying [plaintiff's] motion to remand (on the basis that [a defendant] was improperly joined), the district court nonetheless granted [that defendant's] Rule 12(b)(6) motion to dismiss, which 'operate[d] as an adjudication on the merits.' As we have discussed, the district court did not have jurisdiction to do so. As discussed above, once it determined that [the defendant] was improperly joined, the district court effectively dismissed [plaintiff's] claims against him *without* prejudice. . . . That motion [to dismiss] should have been denied as moot."

818 F.3d at 210. Accordingly, if Ortho El Paso is found to be improperly joined, the Court recommends denying Ortho El Paso's Motion to Dismiss as moot.

## IV.   CONCLUSION

For the reasons set forth above, the Court **RECOMMENDS** that Plaintiffs' Motion to Remand (ECF No. 4) be **GRANTED** and that the case be **REMANDED**, pursuant to 28 U.S.C. § 1447(c), to the 34th Judicial District Court in El Paso County, Texas.

The Court **FURTHER RECOMMENDS** that no action be taken on Defendant Ortho El Paso's Motion to Dismiss (ECF No. 10) or, in the alternative, that the Motion to Dismiss be **DENIED AS MOOT**.

In the event that the Motion to Remand is denied on the basis of the improper joinder of

Defendant Ortho El Paso, the Court **RECOMMENDS** that Defendant Ortho El Paso's Motion to

Dismiss (ECF No. 10) be **DENIED AS MOOT**.

**SIGNED** and **ENTERED** this _12th_ day of June, 2020.

MIGUEL A. TORRES
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT, WITHIN FOURTEEN DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT, MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT COURT.**